Good morning. Theodore Hadjiantich for Petitioners. I reserve three minutes for rebuttal. May it please the Court. Respondent Intervenor, California Air Resources Board, invites this Court not to address EPA's traditional analysis, but to let the DC Circuit deal with that important issue that was raised by the petitioner, knowing that the petitioners are not parties to that other litigation. The petitioners have waited a long time, over three years, since this Court put a stay on these proceedings, and the petitioners are entitled to have their day in this Court to address their objections to the traditional test, especially given the fact that EPA has not bothered to formally rescind the original grant where the traditional test is paramount and to which CARB still subscribes. Counsel, I understood that both sides agree that the alternative means test is the appropriate test for the analysis, so where's the beef here? CARB still subscribes to the traditional test, and just yesterday, EPA filed a notice of supplemental authority notifying this Court that the new administration intends to reverse the SAFE rule, which is the very rule subject to the litigation in the DC Circuit, and in which EPA formally, for the first time, rejected its traditional analysis. So, we feel that we are entitled, after three years of waiting, to deal with that traditional analysis and the issues that we've raised, given the fact that it's a moral certainty that the new administration is going back to that traditional analysis. But, Counsel, if everybody agrees that the alternative means test is the appropriate test, why should we spend time arguing about the impact of the traditional means, or the traditional analysis? I don't think that everybody agrees to that, Your Honor. CARB certainly is on record in its supplemental briefing as saying that it still subscribes to that traditional analysis. It's EPA who makes the decision, so it really doesn't matter what CARB thinks about it, and EPA is telling us that they will evaluate CARB's proposal under the alternative test. No, yesterday, Your Honor, we all received notice that EPA is going to reverse the SAFE rule, which is the one that rescinded the alternative test. You mean rescinded? Did it not apply? I'm sorry. That, well, did not apply. They did not think that California had that standard, and so they certainly could rely on the alternative test again and say, now we think California didn't meet that standard. So, I didn't read that 28-J letter as saying we now reject the alternative test. That was not stated. No, I'm sorry. I misspoke. EPA's letter yesterday informed us all that they were, the new administration is in the process of rescinding the SAFE rule, which itself rescinded the traditional test. That's why the traditional test, as a practical matter, is still alive. Counsel, wouldn't the most efficient, go ahead, Judge Oliver, or Judge to do whatever it's going to do with regard to the SAFE rule, and that may or may not have an impact on their decision to grant a waiver to CARB in this case, but you would then still have the opportunity to petition for review of whatever decision is rendered by the new administration's EPA, won't you? I mean, it just seems to me like we're arguing how many angels can I don't believe that's the case, especially under the circumstances of this case, where we've had to wait almost four years for this oral argument. As you know, just to go back in time, EPA had requested the court to stay the proceeding pending its reconsideration of the waiver grant. It took over three years to do that, and we've been waiting patiently for this day in court. I'd like the opportunity to present our arguments on both the traditional test and the alternative test, if I may. Well, Counsel, from my perspective, you can argue anything that you want, but I caution you, at least my view of this case, is that any time that you spent arguing about the traditional means test is now, in light of the concession by EPA, not material to my decision. I just wanted to be brief, but I did have the impression that the petitioner had taken the position throughout litigation that the alternative means test was the one that applied, and when thought we advanced the ball and we were moving toward resolving the issues related to that test, that's what I thought coming into this argument. Well, if the court wishes me to address the alternative test first and up front, I'm happy to do that. I do reserve the right to address the traditional test as well. So, under the alternative approach, EPA granted a statewide waiver based on the inability of two regions in California to meet applicable national air quality standards. The waiver grant focused over and over again, a total of 14 times specifically, on the South Coast and the San Joaquin Valley, and the inability of those two areas to obtain NACs without a waiver. That was the basis provided by EPA for the waiver grant under the alternative approach. EPA's rationale for granting the waiver under that analysis cannot be upheld because the facts found do not support the decision made. The compelling and extraordinary conditions in California used by EPA as the basis for granting a statewide waiver relied on the fact that two California air basins, the San Joaquin Valley and the South Coast, could not comply with NACs without the non-road diesel standards. That set forth the petitioner's excerpts of record 010, 011, and 015. Although the waiver grant notes that other regions in those other areas cannot meet NACs without these standards, EPA relies solely and specifically on those two areas to support the waiver grant. Therefore, the facts found don't support a statewide waiver. And so, EPA's explanation for the decision to grant a statewide waiver under the alternative test runs counter to the evidence before the agency. And I'll also add that regard to compliance with the National Ambient Air Quality Standards, EPA's own organic statute explicitly prohibits the adoption of standards other than ones necessary to meet the requirements of the Clean Air Act. That's California Health and Safety Code section 39602. So, EPA's finding under the alternative test that California has compelling and extraordinary conditions requiring statewide standard based on only two of 14 air quality control regions is at odds with CARB's own organic statute. Neither EPA's nor CARB's post hoc rationalizations can support the waiver grant under the alternative test. In SEC v. Chenery, the 1943 version of that case, the Supreme Court held that SEC's action cannot be upheld merely because findings might have been made to support the decision taken. Judicial review has got to be based on the agency's actual reasoning, not post hoc justifications in litigation. Also, is it your position that the, well, first I guess CARB and then EPA in evaluating CARB's waiver request cannot enact tougher standards to deal with substantial portions of the state? I mean, that San Joaquin Valley and the South Coast region contains some of the worst pollution in the state compared to, for example, the North Coast or the Northeast Plateau. Is your position that the state can't address tougher regulations in order to meet those parts of the state that are in the worst shape, even though they may not be necessary for less populated or geographically friendly, if I can use that term, portions of the state that don't require tougher standards? Well, our position is this, your honor, that in the waiver grant, in the body of the waiver grant, EPA granted a statewide waiver based on its finding that only two areas in California cannot meet the national ambient air quality standards without the waiver grant. But the two areas, the two basins that were selected, I mean, the South Coast region is probably the most heavily populated area of the state, is it not? And the San Joaquin Valley, although not as populous, still has a lot of agriculture and so on that rely on off-road diesel engines to handle the crops and so on. So I'm still wondering, why is it arbitrary and capricious for the regulators to focus on the two basins that are, I'll call it the worst offenders when it comes to not meeting the national air quality standard? We're not arguing at all that it's arbitrary and capricious for CARB to focus on those two areas, or for EPA to focus on those two areas, if it would have granted the waiver application for those two areas. Those are the two areas that EPA says cannot comply with with NAAQS without these regulations. Here's what puzzles me, and maybe you can help me with this. I know that, let's take, for example, railroad locomotives that travel not only up and down the entire length of the state of California, but all the way across the country. I don't understand how a regulator couldn't prescribe tougher emission control standards for railroad locomotives in order to reduce pollution in the south coast basin, when the practical effect is that railroad engine is going to run right through the northeast plateau when it's pulling freight cars up there. So, as a practical matter, how does the regulator address that problem if it doesn't enact a tougher standard to meet the worst parts of the state? I think with regard to your specific example, there certainly could be a carve-out for, you know, that truly mobile source that can go throughout the state. But with regard to most of these, we're talking about non-road vehicles that basically, we're talking about excavators, we're talking about backhoes, we're talking about vehicles that are at construction sites or at agricultural sites. Same problem with hypothetical. Well, they can, except not on their own motion. And to the extent that those non-road vehicles would be moved from one area of the state to another, they would be or could be made subject to the specific San Joaquin Valley and south coast area emission requirements. But that's not what happened here. Let me ask you a question. I'm asking you a question. There's specific data regarding the San Joaquin Valley and specific information regarding the south coast air basin. Then there's additional information that EPA posits relative to this alternative test. They talk about studies showing the exposure to California alone, exposure to particulate matters results in approximately 900 deaths per year statewide. So your argument is that though they cite some additional information in support of their decision, that is not sufficient. I think that's your argument, that the additional information is not sufficient to justify the decision. Is that what you mean? Well, I think that's generally correct. But more specifically, the finding that they made to support the statewide waiver was that the two areas needed these regulations to comply with the national ambient air quality standards. They didn't make a finding with regard to any other areas. And that's important. That's our position. So the EPA points to these statewide issues. And I think with respect to PM 2.5, they say that the diesel emissions were a primary driver in preventing the state as a whole from eating the next in the category of PM 2.5 by 2014. And they also, as Judge Oliver was indicating, talk about statewide public health benefits associated with the rule, and statewide ozone precursors and the like. So they certainly frame it statewide. Why is that not sufficient? Because the basis of the finding, Your Honor, was that only two areas could never under any circumstances comply with NAAQS without these regulations. They did not say that with regard to any other area in California. And that is really one of our main issues with regard to the alternative test. We also have some serious procedural questions, procedural difficulties with how the alternative test was applied. But I see that my time is running out. And I do reserve the remainder of my time for rebuttal. All right. We'll hear from the other side. Now, I understand that the EPA and CARB is dividing their time with 13 minutes to the EPA and seven minutes to CARB. So please watch the clock. And if EPA is commencing to keep an eye on the clock, so you leave enough time for your counsel. All right, you can start. Good morning, Your Honor. Eric Kostetler from the Department of Justice representing EPA. In enacting Section 209, Congress did recognize that California faces uniquely severe air pollution problems and presumptively should be able to craft its own state motor vehicle emission control programs. And in the action here, EPA did appropriately act under authority of Section 209E to grant California's request for a waiver of preemption and allowing it to proceed to regulate in-use off-road diesel vehicle fleets. On the record that was before the agency in 2013, EPA reasonably determined that California does need this particular set of standards to address the state's extraordinary air quality problem. And therefore, the waiver should be upheld. And at this point, of course, as Your Honors have recognized, the scope of the dispute between the parties has considerably narrowed from where we started. The only issue this court need resolve is whether EPA's decision was arbitrary and capricious on this record. And we submit that the decision easily meets that very deferential standard of review. And in my time, I'd like to amplify on the reasonableness of the decision and the record support for it while addressing Petitioner's one substantive and related procedural argument. But before I do get into the merits of the alternative rationale, Your Honors, I did first just want to underscore that it is the government's position that this panel need not and should not reach or address the interpretive question that was originally briefed as to the reasonableness of the former interpretation that was withdrawn. If I could just interject a question then, because we understand that the D.C. Circuit is currently considering whether the alternative interpretation is permissible. Do we have to hold this case for the D.C. Circuit to rule? Or should we decide that under either case how it would come out? Your Honors, we would encourage you not to reach or opine on the interpretive question in any respect, but simply to uphold the decision based on the alternative rationale and the interpretation that Petitioners and EPA now agree upon. In the absence of a current dispute in this case between Petitioner and EPA, it seems appropriate for the Court to simply uphold EPA's action based on the rationale that the parties agree upon. Turning to the merits of the alternative rationale, I did want to highlight some aspects of the record here that I think are getting overlooked by my friend. First, as the record reflects, the state does continue to suffer from some of the very worst air quality in the nation. There are numerous areas in California that are not in attainment with either the ozone or particulate matter standards, and the state has a greater level of non-attainment than other states. And the record also reflects, second, that off-road vehicles that will be subject to this program are a significant source of that severe air pollution problem. The on-road vehicles that are subject to these standards, the off-road vehicles, are the sixth largest source of NOx and the fourth largest source of diesel particulate matter in the state. And also, third, the record reflects that controlling emissions through this program from those vehicles will make a significant dent in the state's air quality problems. The record reflects these standards will achieve at least a 17 percent reduction in NOx emissions by 2023 and a 21 percent reduction in particulate matter emissions. And fourth... If I understand the opposing counsel's argument correctly, the argument is that the waiver would only have to be towards the two districts that were out of compliance, and there isn't a basis for the waiver for a statewide waiver. So it was arbitrary and capricious to find there was a need statewide. Yeah, a couple things, Judge Okuda. First, I think my friend is not appropriately capturing the entirety of the record. As Judge Oliver noted, there's extensive discussion in the preamble on the effects of particulate matter, and those effects are statewide no matter where the exposures occur. But the fundamental point in response to that particular argument to be made here is that it's clear on this record that California simply cannot adequately protect the health of all of its citizens absent this particular regulatory program. And there's nothing irrational about EPA authorizing the program, even if the pollution problems are most severe and the program is most needed in the South Coast and San Joaquin, two regions in which some nearly 20 million Californians live. These are not insignificant areas of the state. And look, nothing in Section 209 indicates that California intended to preclude California from securing some regulatory authority because some localities have a more severe pollution problem than others. The waiver goes to the state as a whole. It doesn't go to particular localities, and nothing in Section 209 suggests that EPA should be focused on a region-by-region analysis. And just to be clear, the South Coast and San Joaquin regions aren't the only regions in the state that have an attainment problem. Far from it. The record reflects that the time the state put together its state implementation plan in 2007 and was designing this program, there were 15 ozone non-attainment areas in the state, and California expressly found that at least three additional ozone non-attainment areas would meet the attainment requirement. And so, it's just not accurate to say that only two regions are going to benefit from this program. I'd also like to point out that the argument petitioners are making was waived. It wasn't preserved administratively, and they concede that point in their brief. And it's well settled that if a person has an available opportunity to raise an issue to the agency through an administrative process, the person must do so, or the argument is forfeited. So, we think the court doesn't even need to reach this issue. It could simply deny this having been waived. But if it is reached, we think it lacks merit. One other observation is that, you know, the state didn't really adopt a one-size-approach. Here, the state actually did provide relief in this program to rural attainment areas. The provisions and the standards aren't as stringent in attainment areas. So, it's not really accurate to say California wasn't mindful of this issue. But ultimately, it's not EPA's job to second-guess California's policy decisions as to how it structures the program. EPA's job is simply to apply Section 209, look at the three factors, the three criteria it's supposed to look at, and decide whether California has shown an adequate need. And the burden of proof is on petitioners and the administrative proceeding to show that California showing was inadequate. And it's well settled under the case law that the presumption weighs in favor of granting a waiver request. If I could just briefly address a petitioner's procedural argument, that also lacks merit. The sole procedural requirement in Section 209 is to provide notice and an opportunity for comment. And EPA did so. Petitioners had a fair opportunity to present any comments they wished to regarding the waiver applications. And indeed, they did submit a lot of comments. And EPA gave them serious consideration. But the point is, they didn't present this one argument. They're now advancing on judicial review. That argument was waived. And petitioners have tried to rely on the logical outgrowth doctrine. It's important to bear in mind that this was an informal adjudication. It was not a rulemaking. The logical outgrowth doctrine applies to rulemakings and flows from the obligation in the context of a rulemaking to spell out in detail the nature of a proposed course of action. In an informal adjudication, there is no such requirement. And the only requirement in 209 was to provide notice and an opportunity for comment. And EPA did so. But look, even if you applied logical outgrowth principles, nothing in this decision should have come as a surprise to petitioners. Petitioners asked EPA to apply this particular interpretation of the needs test. It should not have been a surprise that EPA applied the interpretation. They asked EPA to apply. And it's not EPA's error that they didn't support that request with information that successfully rebutted California's showing of need. And with respect to the two areas argument, California laid out in the state rulemaking proceedings and in its submission that it believed these reductions were particularly necessary and important in the San Joaquin and South Coast regions. So petitioners clearly could have commented on that aspect of the presentation if they thought it was a basis for denial. And they didn't present that argument to EPA. So we do think it was waived. If you, counsel, there's a case that was submitted relatively late, the Chesapeake Climate Action case versus the Environmental Protection Agency. If you could just very quickly, I know you don't think that that case is relevant. If you could very quickly just tell us right now on the record why it's not relevant. Yeah, I would direct the court's attention to our 28J response letter, which addressed that. But the long and short of it is that that was a case addressing rulemaking requirements. And in particular, the very special rulemaking requirements under Section 7607D of the Clean Air Act, which only applies certain identified enlisted EPA actions. This wasn't an action covered by 7607D. That case also involved a reconsideration proceeding, which has special requirements. This case doesn't involve any such reconsideration proceeding. And to the extent the case did talk about logical outgrowth principles, as I've already addressed, Judge Oliver, you know, we don't think those principles applied in the context of this informal adjudication. So just to sum up, you know, we don't think there was a substantive error. There's no procedural error. EPA's decision was well reasoned, well explained. There's a lot of detail in this decision pertaining to the alternative rationale. And we would request that you uphold the waiver without reaching the interpretive question that is no longer in dispute. And I will yield the remainder of my time if there are no further questions to Ms. Meckenstock. I just have one. The executive order that was signed two days ago by the President, what impact is that going to have, if any, on this particular adjudication decision? Well, it doesn't have any effect in terms of where we are right now, because right now there's no new interpretation that's been announced. EPA has, this administration has announced an intent to revisit the safe one national program rule. There's a lot in that rule beyond the needs test interpretation. It's a big rulemaking. But we could only speculate as to what the outcome of that administrative proceeding will be. I think, you know, we need to let that play out. If petitioners are dissatisfied with the outcome of that proceeding, they can, you know, challenge the outcome. But at this stage, in this case, there is no dispute between these petitioners and EPA at this point in time with respect to the needs test that requires this court's engagement and resolution. Thank you. I'll yield the remainder of my time. Thank you, Your Honors. If it's okay, I'll proceed. May it please the court, Elaine Meckenstock for the question. As the court has noted, CARB maintains that EPA's traditional interpretation of the need inquiry is correct. But CARB also agrees with EPA that the court need not and should not reach that question here because EPA's alternative rationale in which it applied petitioners' preferred interpretation stands up to judicial review and is not arbitrary and capricious. And I'll just... Counsel, isn't that a little strange, though? You say, well, you believe that traditional tests should apply. But you want us to disregard that. And if that should apply, then how do you shift so easily to an alternative argument without addressing the first? Well, because the second basis is sufficient to uphold EPA's ultimate decision to grant the authorization because EPA applied both its traditional interpretation and petitioners' preferred approach. And so this is a situation where it's not necessary for the court to reach the interpretive question. And I think there are some factors here that several of the judges have already mentioned that support the exercise of judicial restraint. You know, one of those being there's a very large proceeding before the D.C. Circuit in which this question is squarely presented. And there are many, many, many parties to that proceeding who are not present here, including more than half the states in the country on either side of the V, as well as major automakers and other industry participants also on either side of the V. And so for that reason and because, as Judge Tallman indicated, EPA may or may not decide to change its interpretation again. Those are reasons, I think, to exercise judicial restraint and decide this case on the only necessary grounds, which is the affirmance of EPA's alternative rationale. I'm happy to answer any questions the court has about the interpretation, but given that the necessary question is the alternative rationale, I'll focus the time I have to addressing points related to that. I do have one, Ms. McIntosh, and that is could you tell us what, if any, evidence petitioners introduced in the record of this proceeding that would question the finding by EPA that the waiver was warranted? No, Your Honor. And in fact, if you look in the record at ER 494 and 511, those are the pages of petitioners' comments where they argue that under their interpretation, California doesn't need these standards. And there is no analysis or explanation and no citation to any evidence. They're simply conclusory statements. So I think that both supports the idea that petitioners waived their procedural objection to the alternative rationale because they clearly understood they needed to establish that California didn't need the standards under their interpretation, but they chose not to do so. And they haven't identified here either any evidence in the record for the court that would support, you know, a different conclusion. And in fact, the only argument they make is the argument about the two air districts not being sufficient basis for statewide standards. Counsel for EPA addressed numerous issues with that argument. I will add, echoing the waiver of that argument, that if you look at the transcript from the administrative hearing, you'll see that at excerpts of Record 467, CARB testified at that hearing about California's need and focused, not exclusively, but focused on these two air districts as extraordinary and compelling conditions in California. And petitioners' counsel testified immediately after CARB. And, I'm sorry, CARB's testimony is at ER 55 to 56. Petitioners' counsel followed at ER 76 to 85 and said nothing about those two air districts being an insufficient basis for these standards. Further, that hearing was held a month before the comment deadline. And in their comments, petitioners did not raise concerns about this as an adequate basis for application of their preferred needs test. So I think EPA is correct that that argument has been waived. Further, I would say the statutory and regulatory history here clearly indicates that petitioners' argument is also without merit. California has always had statewide standards for mobile sources since 1959, which was before Congress created the original waiver provision in 1967. Congress created that provision, recodified it in 1970, amended and strengthened it in 1977, and then effectively copied it into section, what is now section 209E2, in 1990. All that while, California has had statewide standards for these mobile sources. And Congress could have inserted language into the statute to say California should stop doing that and have geographically limited standards, but it didn't. And I think that's a pretty clear indication that Congress is comfortable with California having statewide standards. And in fact, when Congress adopted the original waiver provision, there's a tremendous amount of discussion in the legislative history from 1967 of the smog problem in LA. There were other problems in the state as well, so it wasn't the exclusive focus, but it was a very strong focus for the reason of the waiver. And California had statewide standards there, so Congress has already decided that it's acceptable to have statewide standards for mobile sources, which, as Judge Tallman noted, can easily move from one air basin to another. So there simply is no basis for petitioners' argument. And as Judge Tallman noted, these are enormous air districts covering huge numbers of Californians. And so the idea that California can't regulate mobile sources on a statewide basis in order to improve air quality for those millions of Californians just doesn't hold water. Furthermore, as the Court has noted, there's tons of evidence in the record of there being air pollution problems elsewhere in the state. There's a map at ER 328 that shows areas of non-attainment for ozone, which is one of the in the Federal Register. Note 60 on page 58098, which talks about California's finding that even the NAAQS level for particulate matter is insufficient to protect public health. So there's no question that California needs these standards to protect Californians from public health harms. Thank you for your argument. You have a few minutes for rebuttal. You're muted. Please unmute yourself. Thank you, Your Honor. Regarding counsel's argument on waiver, on the procedural objections, EPA first unveiled its specific alternative approach in the waiver grant itself. And petitioners did not have any opportunity to comment on that provided of opportunity to comment was in the context of decades of applying the traditional approach. And so the commenters had no opportunity to even contemplate that the specific methodology used here for the alternative approach would be the one that carries the day in this litigation or EPA seeks to. But counselor, are you saying that you did not understand that CARB was acting on the basis of addressing pollution in some of the worst areas of the state and therefore you couldn't comment on their focus on two of the 14? That's not what I'm saying, Your Honor. EPA and CARB, I'm looking at the procedural problems with what happened here in the alternative test. EPA and CARB argue that the waiver grant is subject only to the bare minimum procedural requirements afforded to informal adjudications. They say that waiver was neither informal rulemaking nor formal adjudication. And they argue that as long as some kind of notice, any kind of notice was provided, that's okay. That's not okay. The California waiver grant not only has particular applicability to the state of California, it also has general applicability and future legal effect on all those who operate non-road diesel vehicles, be they in California or in any other state that chooses to adopt the EPA California standard. But is there anything that requires anything in the statute that requires anything beyond informal, that characterizes it as something beyond informal adjudication that only requires notice and opportunity to be heard? Well, it meets the definition of a rule under the APA. I will also say that... How is that? It's a waiver to California. I'm sorry? There wasn't any rulemaking. It was a waiver grant, which is generally adjudicatory. Well, it has general or particular applicability and future legal effect, as I've described. It also could be construed as a formal adjudication because the Clean Air Act and EPA's implementing regulations, they require EPA to provide notice and a hearing to interested parties. And California has got to provide the record it developed in connection with the state rule for which waiver is sought. Council, doesn't Congress know all that? I mean, we have emission control equipment, which has to meet California emission standards on cars that are manufactured and sold all over the United States. To go back to my hypothetical with regard to locomotive engines, Congress knows that those engines travel over the lines of the railroads that use them, extending well beyond the borders of California. And yet it has taken no action to rescind the authority that it gave in the Clean Air Act for California to be carved out as a laboratory of testing and exploration of alternative emission standards. The only point I'm making here is the procedural issue that the waiver grant can be construed as either requiring informal rulemaking or formal adjudication. But EPA did neither. EPA took the route of informal adjudication, which is not permitted in this particular case. They could have done it through informal rulemaking. They could have done it through formal adjudication, but they didn't comply with any of the procedures. But all they were required to do, this was an authorization request, was not a rulemaking request. And so all they had to do is to give notice and allow comment on that authorization request, which they did. Which means that you had broad ability to make any comments that you wish, not only in regard to factual material, but in regard to the test to be applied. And you did that. So wasn't that appropriate? Why isn't that appropriate notice since you did what was contemplated? We believe that was not appropriate notice because the final waiver grant was not a logical outgrowth. But in addition to that, what we had here was an adjudication was appropriate because the statute and the regulations require notice and a hearing, and the decision has to be made on the record. That's the very definition of a formal adjudication. You're well over your time now, so please just wrap up. Okay. So during the hearing, council mentioned that our testimony was immediately after CARBS. I was the testifier on behalf of petitioners. I asked the hearing officer for the opportunity to cross-examine CARB in connection with that testimony, and I was denied that opportunity. Therefore, the requirements of formal adjudication were denied to the petitioners. Therefore, procedurally, this could be done over again pursuant to formal adjudication requirements. Thank you so much, Your Honor, for the additional time. All right. I think we have your arguments. The case of Dalton Trucking versus EPA and CARB is submitted, and we're adjourned for this session this morning.
judges: Tallman, Ikuta, Oliver